UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 09-330-DLB

SHAWNA SMITH NAPIER                                                                      PLAINTIFF

vs.                              **MEMORANDUM OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION                                                DEFENDANT

\* \* \* \* \* \* \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Shawna Smith Napier filed an application for supplemental security income (SSI) payments on January 20, 2004. (Tr. 34). At the time of filing, Plaintiff was 19 years old and alleged a disability onset date of March 15, 2001. (Tr. 16). Plaintiff alleges that she is unable to work due to seizures, a nervous disorder and depression. (Tr. 15). Her application was denied initially and upon reconsideration. (Tr. 36-39, 42-44). At Plaintiff's request, an administrative hearing was conducted on January 20, 2006 before Administrative Law Judge (ALJ) Frank Letchworth. (Tr. 315-344). On February 10, 2006, the ALJ ruled that the Plaintiff was not disabled and therefore not entitled to SSI benefits.

1

(Tr. 12-24). This decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review on April 26, 2006. (Tr. 5-7). Plaintiff appealed the denial of benefits to this Court, and on March 28, 2007, the Court reversed the administrative decision and remanded for further proceedings. *See Smith v. Astrue*, Case No. 6:06-cv-234-GWU. The Court found that the ALJ failed to consider Plaintiff's limitations on sustained concentration and persistence as contemplated by two agency sources. (Tr. 404-405).

ALJ Letchworth held a second administrative hearing on August 10, 2007 (Tr. 520-544) and, on September 4, 2007, again ruled that Plaintiff was not disabled. (Tr. 366-380). The Appeals Council subsequently denied review. (Tr. 345-47). On October 3, 2009, Plaintiff filed the instant action with this Court. (Doc. #2). The matter has culminated in cross-motions for summary judgment which are now ripe for adjudication. (Docs. #11,12).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance, it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d

2

388, 389 (6th Cir. 1999). Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 20, 2004, the date the application was filed. (Tr. 371). At Step 2, the ALJ determined that Plaintiff had the following combination of severe impairments: a history of seizures, non-insulin dependent diabetes mellitus, borderline intellectual functioning, and an anxiety disorder. (Tr. 371-72). At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 373-74). Specifically, the

ALJ evaluated Plaintiff's mental status under paragraphs B and C of Listing 12.06 (Mental Disorders) and concluded that Plaintiff's condition did not meet or equal any criteria under either paragraph. (Tr. 373-74).

At Step 4, the ALJ found that the claimant retains the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but has several nonexertional limitations. Specifically, the ALJ found that Plaintiff

> cannot perform work that requires any exposure to hazardous equipment or unprotected heights, using dangerous or motorized machinery, or any climbing of ladders, ropes, or scaffolding; she can perform simple one or two step instructions, she can work in an object focused setting; she is precluded from work that involves contact with the general public; she can have occasional contact with supervisors, and is precluded from quota or production rate work; she can perform work that accommodates a moderately limited ability to complete a workday and a moderately limited ability to respond to changes in the work setting.

(Tr. 374-378).

As Plaintiff had no past relevant work to which she could return, the ALJ continued to the final step of the sequential evaluation. (Tr. 378). At Step 5, the ALJ considered the claimant's age, education, work experience, and RFC, along with the Medical Vocational Guidelines and testimony from a vocational expert (VE), and concluded that there exist a significant number of jobs in the national economy–such as hand packer and garment sorter–that Plaintiff can perform despite her nonexertional limitations. (Tr. 379). Consequently, the ALJ found that the Plaintiff has not been under a disability as defined by the Social Security Act since Plaintiff's application date of January 20, 2004. (Tr. 379).

**C.     Analysis**

Plaintiff advances two arguments on appeal. First, Plaintiff asserts that the ALJ erred because the hypothetical question posed by the ALJ to the VE did not accurately

4

describe Plaintiff's functional limitations. Second, Plaintiff contends that the ALJ improperly relied upon the testimony from the VE because he failed to resolve a conflict between the *Dictionary of Occupational Titles* (DOT) and the VE's testimony. Each of these arguments will be addressed in turn.

### 1. The Hypothetical Posed by the ALJ Accurately Described Plaintiff's Non-Exertional Limitations

Plaintiff contends that the hypothetical question posed to the VE by the ALJ was inadequate because it failed to incorporate all of the limitations assessed by agency physicians. Specifically, Plaintiff argues that the hypothetical posed to the VE should have included restrictions that she was moderately limited in her ability to complete a normal work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

To meet his burden at Step 5 of the sequential evaluation, the ALJ must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). This type of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779.

This case was initially remanded for further administrative consideration because the vocational testimony did not reflect the mental restrictions assessed by two reviewing agency psychologists who found moderate concentration and persistence limitations. (Tr.

255, 283, 404). At the subsequent hearing, the ALJ posed a hypothetical to the VE including the following nonexertional limitations:

> The Claimant can perform no work that involves exposure to unprotected heights or hazardous equipment, cannot operate motorized or dangerous machinery of any kind, ... cannot climb ladders, ropes or scaffolds. Claimant can perform simple one or two-step instructions, can work in an object focused work setting, can perform no job that involves contact with the general public, can have occasional superficial interaction with co-workers or supervisors, cannot perform production rate or quota work, *requires further accommodation of a moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, also requires accommodation of moderately limited ability to respond appropriately to changes in the work setting.*

(Tr. 550-51) (emphasis added). This hypothetical undoubtedly included the sustained concentration and persistence limitations that were critical to the Court's remand decision. Therefore, Plaintiff's argument that the hypothetical posed to the VE was inadequate because it failed to accurately describe her functional limitations is unfounded.

### 2. The ALJ Properly Considered the Vocations Listed by the Vocational Expert

Plaintiff asserts that the ALJ erred in accepting and relying upon the testimony of the vocational expert concerning the availability of suitable jobs in the national economy because the DOT descriptions of garment sorter and hand packager include repetitive short cycle work that could not be done by an individual who is moderately limited in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff also argues the ALJ was on notice of this conflict, because the focus of the remand was Plaintiff's ability to work in light of her concentration and persistence limitations. In other words, Plaintiff contends that the ALJ failed to resolve a

6

conflict between the VE's testimony and the DOT, as required by Social Security Ruling 00-4p.

Social Security Ruling 00-4p states that the ALJ "has an affirmative responsibility to ask about any possible conflict between [the] VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, *4 (Dec. 4, 2000). Furthermore, when there is an apparent unresolved conflict between the vocational testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the ... evidence to support a determination or decision about whether the [Plaintiff] is disabled." *Id.* at *2. This ruling "sets forth the actions required of an ALJ when there is an *apparent* conflict between the testimony of the vocational expert and the DOT." *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 374 (6th Cir. 2006) (emphasis added). It does not, however, address what an ALJ must do when a conflict is not apparent. "Under SSR 00-4p, the ALJ is entitled to evaluate the testimony of a vocational expert, the DOT, and other relevant evidence, but is not required to rely on any of these sources." *Id.*

As stated above, ALJ Letchworth posed a hypothetical question to the VE accurately describing Plaintiff's functional limitations. (Tr. 550-551). In response, the VE testified that a significant number of jobs exist in the regional and national economies that Plaintiff could perform, such as hand packer and production laborer. (Tr. 551). In follow-up, the ALJ asked the VE how production laborer complies with the no production rate work limitation. (Tr. 551). The VE testified that production laborer is not specific to an assembly line position. (Tr. 551). The VE provided one example–garment sorter–that was a production laborer occupation but did not require production rate work that a production assembler or inspector would require. (Tr. 551-552). Finally, the ALJ asked the VE whether her

7

testimony was consistent with the DOT. (Tr. 552). The VE testified that it was, and Plaintiff never brought to the ALJ's attention the alleged conflict between the vocational testimony and the job descriptions in the DOT. (Tr. 552).

As a preliminary matter, the Court recognizes that there appeared to be a potential conflict between the VE's testimony that Plaintiff could perform the occupation of a production laborer and Plaintiff's restriction of no production rate work. However, further questioning of the VE revealed that the production laborer occupation included jobs, such as garment sorter, that did not require production rate work and were therefore not inconsistent with Plaintiff's limitation. Consequently, the ALJ elicited a reasonable explanation for the potential conflict before relying on the VE testimony, as is required by Social Security Ruling 00-4p. Furthermore, the VE's testimony revealed that there was no apparent unresolved conflict between her testimony and the DOT, and therefore nothing more was required of the ALJ. However, even if the VE's testimony was inconsistent with the DOT, an ALJ may rely on VE testimony despite inconsistencies in the DOT if the expert is found to be credible, and the hypothetical question posed to the VE accurately reflects the Plaintiff's physical and mental limitations. *Strong v. Social Sec. Admin.*, 88 F. App'x 841, 847 (6th Cir. 2004). As discussed above, the hypothetical posed to the VE accurately reflected Plaintiff's limitations. Therefore, the ALJ did not err in relying on the VE's testimony concerning the production laborer occupation.

Plaintiff also asserts a conflict exists between the DOT and the VE's testimony because the occupations of hand packer and garment sorter could not accommodate Plaintiff's concentration and pace restrictions. Furthermore, Plaintiff contends that the ALJ had a duty to resolve this conflict because the case was on remand concerning those

8

specific limitations. Although the ALJ has an affirmative duty to ask the VE whether her testimony is consistent with the DOT at the time of the hearing, investigation of the accuracy of the expert's testimony is not required, "especially when the [Plaintiff] fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008).

Any conflict between the DOT and the testimony of the VE concerning the jobs of hand packer and garment sorter with respect to Plaintiff's concentration and pace restrictions was not apparent to the ALJ. When asked whether her testimony conflicted with the DOT, the VE responded in the negative. (Tr. 552). Consequently, the ALJ had no further duty to investigate the accuracy of the VE's testimony. Despite Plaintiff's assertion, this Court's decision to remand the case in order to ascertain Plaintiff's disability status did not put the ALJ on notice of any apparent conflict between the DOT and the testimony of the VE. The Court's decision made the ALJ aware of the fact that Plaintiff had other limitations that needed to be addressed and nothing more. Furthermore, Plaintiff failed to bring any apparent conflict to the ALJ's attention. Therefore, the ALJ did not err in accepting and relying upon the testimony of the VE concerning the availability of suitable jobs in the national economy.

### III.  CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's ultimate finding that Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Accordingly,

**IT IS ORDERED as follows:**

1. The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #11) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 28th day of September, 2010.

Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-09-330 Napier MOO.wpd